L. W. JOHNSON, Appellant, v. THE SCHOOL CORPORATION OF
CEDAR, A. CRAVEN *et al.* Appellees.

School Township Contract: SIGNATURE BY MEMBERS OF BOARD.  An
instrument signed by a majority of the school board of a town-
ship, and agreeing to purchase and pay for certain school sup-
plies provided a majority of the members sign the agreement-
is the contract of the township, and not the individual con,
tract of the members signing.

WARRANT WHEN VOID:  A warrant executed by the president and
secretary of a school board without the authority of the rest
of the school board, in payment for school supplies contracted
for by a majority of the board, is void.

ACTION ON ORIGINAL CONTRACT:  *After acceptance of void warrant.*
Where a majority of a school board entered into a written con-
tract to purchase and pay for certain school supplies, the ac-
ceptance of a void warrant by the assignee of the other party
to the contract did not supersede the original contract, so as
to deprive him of the right to sue thereon.

WHAT IS CONFIRMATION OF CONTRACT.  A majority of the school
board of a township contracted for certain school supplies, and
at the next meeting of the board a motion not to accept the
supplies was defeated.  *Held,* a confirmation of and approval
of the order.

AUTHORITY TO CONTRACT:  *Lack of funds on hand.*  A school town-
ship has power to contract for the purchase of school supplies,
though at the time the contract is executed there is no con-
tingent fund on hand.

NOT OPPOSED TO PUBLIC POLICY.  A salesman of school apparatus
induced a majority of the members of a school board to execute
a contract for the purchase of school supplies, each member
signing the contract separately, and without consultation
with the others.  No deceit was used in obtaining the sig-
natures of the various members.  The supplies were accepted
and used by the district, and it was sought to charge the district
with payment therefor.  *Held,* that the circumstances attend-
ing the execution of the contract did not render it opposed to
public policy.

*Estoppel to Assert.* Even if it had been so, acceptance and retention of the benefits by the district would have prevented it from taking advantage of the objection.

*Appeal from Calhoun District Court.*—HON. S. M. ELWOOD, Judge.

MONDAY, MAY 26, 1902.

SUIT in equity to recover for school supplies furnished the defendant corporation. The trial court dismissed the petition, and plaintiff appeals.—*Affirmed* in part.

*Healy & Healy* for appellant.

*M. R. McCrary* and *J. B. McCrary* for appellees.

DEEMER, J.—Originally the action was at law upon a contract in words and figures as follows: "State of Iowa, September 7, 1898.   We, the undersigned members of the school board of the district township of Cedar, in the county of Calhoun, do hereby contract for nine sets of Kennedy's Mathematical Blocks, provided a majority of said board sign the agreement, for which we agree to pay D. T. Blodgett or agent the sum of $25.00 a set.   We hereby authorize the officers of said board to issue a warrant for the same, payable twelve months after date, without interest.   A. Craven.   W. C. Dooley.   T. Manahan.   D. W. Carhill.   James Robinson."   The corporation was not made a party to the suit, and the defendants who were parties pleaded, in substance, that plaintiff received in satisfaction of their obligation under the contract a warrant issued by the school township for the full amount of the purchase price provided in the contract.   They further alleged that the warrant was accepted as a performance of their contract.   They also pleaded that the contract was contrary to public policy and void, because signed by the defendants, who were officers of the school township, sep-

arately and individually, and for the purpose of defrauding the township. By way of cross petition they pleaded mistake and fraud in the execution of the contract; that it was intended to bind the township, and not themselves individually, which plaintiff's assignor well knew; and they asked reformation of the instrument in order that it might correspond with the intent of the parties. Thereupon plaintiff amended his petition making the school township a party defendant, and asking for judgment against it, in the event the contract was reformed as prayed by defendants. Pursuant to the prayer, the school township was brought in, and it denied that the said contract was ever entered into by the officers of the district. Plaintiff replied to this, pleading ratification and adoption of the contract by the township, and acceptance and use of the property contracted for. The whole case was then transferred to the equity docket, and, after the school district had filed an amendment to its answer, pleading that the contract was obtained through fraud, and was contrary to public policy, was tried to the court, resulting in the decree hitherto mentioned. Some of the questions presented are ruled by *Hanna v. Wright*, 116 Iowa, 275, decided at the April sitting of this court, and will not be reconsidered on this appeal. The points not common to the two cases will alone be considered.

After the execution of the order above set out, which we think was the obligation of the school township (*Baker v. Chambles* 4 G. Greene, 428; *Lyon v. Adamson*, 7 Iowa, 509; *Independent Dist. v. Reichard*, 50 Iowa, 100), and on the 9th day of September, 1898, defendant Craven, as president, and Dooley, as secretary, of Cedar township, issued the following warrant: "$225.00. Calhoun County: The directors of the district township of Cedar will pay D. T. Blodgett, or order, the sum of $225.00 out of the contingent fund, allowed September 9, 1898, one

year after date, with interest after maturity at 6 per cent. per annum.  A. L. Craven President.  W. C. Dooley, Secretary." This was done without express authority of the board of directors of the school township, but was accepted by Blodgett, the payee, and plaintiff, Blodgett's assignee, left the order with the secretary of the township.  Thereafter, and on the same day, the board held a meeting, and the following proceedings were had, as shown by the records of the township: "Regular September meeting, September 9th, 1898.  The board of subdirectors of the district township of Cedar, county of Calhoun and state of Iowa, met in regular session at Center School House.  Meeting called to order by the president at 10 o'clock a. m.  Members present: A. L. Craven, D. W. Carhill, Thomas Manahan, William Andrews, George Graham, James Robinson, David McPherson, J. F. Johnson, and W. C. Dooley. Minutes of the last meeting read and approved.  Motion not to accept mathematical blocks lost.  Those in favor of blocks, A. L. Craven, D. W. Carhill, T. Manahan, James Robinson, and W. C. Dooley; those against blocks, D. McPherson, William Andrews, George Graham, and J. F. Johnson.  On motion, the meeting adjourned.  W. C. Dooley, Secretary.  A. L. Craven, President." The goods called for by the order were shipped to Dooley, as secretary of the board, and by him distributed to the schools of the district, and were accepted and used by each of the nine schools of the township, save one, known as "Andrews' Subdistrict."  About half were distributed prior to the regular meeting of the board and half thereafter. There is no doubt that defendants each and all intended to bind the school township, and not to assume a personal obligation, and that Blodgett knew of this fact.  The entire transaction was for and on behalf of the township, and defendants other than the school township should not be held personally responsible.  *Hanna v. Wright, supra.*  As the warrant was not issued with the authority of the board,

it was invalid, and by reason of that fact it did not supersede the original order, which, when treated as the obligation of the district, was not invalid in view of what follows. At the regular meeting of the board following the giving of the order, which, as we have seen, was issued for and on behalf of the school township, the order was, in effect, approved and confirmed, and the property contracted for accepted, and used by the township. Under this state of facts, the defendant school township should be held liable, unless it be for some of the defenses pleaded by it. That it had power to contract for these goods although it had no contingent fund on hand at the time the contract was executed is settled by the case of *Hanna v. Wright, supra.* Its claim that plaintiff is not the owner of the contract, and is not entitled to sue thereon, is without merit. Equally futile is the claim that the order was never presented to the board for payment. So that the only remaining defense is that the agreement is contrary to public policy and void. We copy from the answer the exact defense relied upon. This defense was made by the individual members of the board, but was adopted by the school township. It was as follows (count 5):. "Defendants, for further defense, state that the school township of Cedar is a body corporate for school purposes under the laws of Iowa; and said Blodgett, referred to in Exhibit "A," plaintiff's petition, well knowing that these defendants were subdirectors and members of said school district, illegally and unlawfully, and with the design to influence the vote of these defendants as members of said board in causing said school district in purchasing the blocks referred to in plaintiff's petition, made Exhibit "A," persuaded these defendants separately and prior to the meeting or organization of said board of said school district to sign said Exhibit "A," the sole purpose of which was to obtain a warrant against said school district, and make the

same liable thereunder for said blocks to the amount of
$225.  That in the making and execution and delivery of
said Exhibit "A" said Blodgett perpetrated a fraud and
an injustice against the laws of Iowa, and especially
against the taxpayers of said school district, and
against public policy.  Therefore said Exhibit "A"
is illegal and void."  In *Mills v. Collins*, 67 Iowa, 164,
where the individual members of a school board made a
somewhat similar defense to an action brought against
them on a contract which clearly imported personal liabil-
ity, and which was not intended by any of the parties to be
binding on the district except as an agreement to call a
meeting of the board, this court, in considering the ques-
tion of fraud in the making of the contract, was led to say,
among other things:  "In connection with these represen-
tations, it is proper that we should consider the contract
which the defendant was asked to sign.  The more it is
examined, the more it will be seen that it is a very ingen-
ious device.  It was drawn with the purpose of capturing
the members of the board separately and forestalling their
deliberate and untrammeled action as a board.  The mo-
ment a member signed, he was in no proper condition
thereafter to act as a member of the board in the same
matter.  The majority became committed, by reason of
their personal liability, to the purchase of the goods for
the district, and without any hearing from the minority.
The law contemplates that no liability of this kind should
be imposed upon the district except by the members of the
board duly convened at a board meeting, and sitting in
consultation.  The object of the contract was to thwart the
law by destroying the board's deliberative character.
The evil of such practice is far greater than would natur-
ally occur to the minds of most men who compose our
boards of school directors.  In the practice of obtaining
such contracts we may assume that those members are ap-
proached who are understood to be most susceptible to

the arts of a successful canvasser.   The practice affords at least an opportunity for approaching that class, and for avoiding the stronger and more independent members. Now if, in addition, signatures can be lawfully obtained upon the false representation that the stronger and more independent members have agreed to sign or approve the purchase, then the law is powerless to prevent a great evil. It may perhaps be said that Collins and T. J. Cowman had no right to allow themselves to be influenced by false representations in regard to Ryan's judgment and desires. But it is not for the plaintiffs to say this, who created the false supposition.   Besides, if Collins and Cowman were to put themselves in a position which should forestall their deliberate action as members of the board, it was not improper that they should consider Ryan's judgment and desires.   Taking the allegations of the answer to be true, we think that Collins and Cowman were drawn by the plaintiffs into a contract which they had reason to believe that the district would assume, and that belief was grounded in part, at least, upon a false and fraudulent statement made by the plaintiffs to induce the contract.''·

There are several reasons why this doctrine should not be held applicable to the case now before us.   In the Mills Case the action was against the individual members of the school district, and there was no claim that they were acting for the district.   Again, their signatures were obtained by deceit, and they had no benefit whatever from the contract.   Here the individuals signing the order were acting for the school township, and bound it, and no one else.   The school township has had the benefit of the property purchased, and it is affirmatively shown that there was no fraud in the transaction.   The only real defense is want of authority in the board to sign the order on behalf of the school township.   Of course, having signed it, they were perhaps under a moral obligation to vote for ratification, but under the facts as we have found them they were

under no legal obligation to do so. But, in any event, as the school township has accepted the benefits of the contract, and has used and had the benefit of the blocks it should be held liable therefor, although the ratification or adoption by the board in regular session should be held of no effect. *Bellows v. District Tp.*, 70 Iowa, 320; *Athearn v. Independent Dist.*, 33 Iowa, 105; *Everts v. District Tp.*, 77 Iowa, 37; *Andrews v. School Dist. No. 4*, 37 Minn. 96 (33 N. W. Rep. 217); *Dubuque Female College v. District Tp. of City of Dubuque*, 13 Iowa, 555. The mere fact that the original contract was contrary to public policy will not relieve the corporation where it accepts and retains the benefits. *City of Tacoma v. Lillis*, 4 Wash. 797 (31 Pac. Rep. 321); *Thomas v. Railroad Co.*, 101 U. S. 71 (25 L. Ed. 950); *Argenti v. City of San Francisco*, 16 Cal. 256. This rule does not apply in cases of corruption or fraud, but there is neither allegation nor proof of either in this case. On the contrary, the evidence on the part of the defendants shows entire good faith, and a belief that they were acting for the best interests of the school district. Under such circumstances it would be most inequitable to allow the school township to retain possession of property which it was clearly authorized to purchase without paying therefor. In *Western Pub. House v. Dist. Tp. of Rock*, 84 Iowa, 101, the officers of the school district were sought to be held individually liable on a contract which clearly bound them, and not the district; and, while there was a claim of ratification, the court held it was not established, and further expressly found that the district township never received the goods, or used them in its schools. There was no showing as we have said, that the contract was intended to bind the district, or that the plaintiff therein ever accepted the proposed adoption by the district township. In *Boardman v. Hayne*, 29 Iowa, 339, there was actual fraud, and the goods were never received or accepted by the district. Moreover, the action

was not against the school district, but against the officers signing the warrant. In *Weitz v. Independent Dist.*, 87 Iowa, 81, the action was brought before the services were performed. In *Moore v. Independent Dist.*, 55 Iowa, 654, the plaintiff's right to compensation was expressly limited by statute. *Young v. Black Hawk County*, 66 Iowa, 460, is not in point, as an examination will show. It relates simply to the powers of local boards of health, and no adoption of the contract by the local body is shown. The case of *Taylor v. District Tp.*, 25 Iowa, 448, involved not simply an irregularity on the part of the board, but entire want of authority, and there was no ratification or adoption by the electors at a regular meeting. The school township cites us to no case which upholds its contention, unless, it be *Mills v. Collins, supra,* and that we do not, for the reasons stated, regard as conclusive. The proceedings of the board at the regular September meeting clearly indicate an intention to accept the blocks, and the evidence shows that they were used and accepted by the district And there being no fraud or corruption shown, we think the school township should be held liable for the purchase price, which does not exceed the amount the school township was authorized to contract for. The judgment and decree as to the individual members of the board is affirmed, and as to the school township it is reversed, and the cause is remanded for a decree in harmony with this opinion.—AFFIRMED in part and REVERSED in part.