PUBLIC FINANCE If an insurance agency manager, whose agency carries the City of Maysville's insurance, runs for and is elected to the office of City Councilman, from and after his or her election and qualification as a City Council member, the City may not enter into or renew a "contract" of insurance with a company for which the Council member serves as a manager or agent under the provisions of 62 O.S. 371 [62-371] (1971) and 21 O.S. 344 [21-344] and 21 O.S. 355 [21-355] (1971). The Attorney General has received your request for an opinion wherein you set forth the following fact situation: An independent insurance agency manager wishes to run for the office of City Councilman. He does not own any of the agency and does not have any interest in it, except being manager with a monthly salary. His is the only agency in the City of Maysville, Oklahoma, with a population of approximately 1,400 people. He does carry the City insurance because his agency is the only one in town. T hen, referring to the Conflict of Interest Law, you ask the following question: Can he run for the position of City Councilman, Ward 5, Maysville, Oklahoma? In answer to your question, there are no statutes which prohibit said person from running for the office of City Councilman under the facts you set forth. However, it is important to look at the result of his election to, and qualification for, the office and how it would affect future contracts with the City. Title 62 O.S. 371 [62-371] (1971), reads in part: "No board of county commissioners, nor city council, nor board of trustees of any town, nor any district board of any school district in this state shall make any contract with any of its members, or in which any of its members shall be directly or indirectly interested; and all contracts made in violation of this section shall be wholly void . . . ." (Emphasis added) In addition, 21 O.S. 344 [21-344] and 21 O.S. 355 [21-355] (1971), are applicable: 21 O.S. 344 [21-344]. Every public officer, being authorized to sell or lease any property, or make any contract in his official capacity, who voluntarily becomes interested individually in such sale, lease or contract, directly or indirectly, is guilty of a misdemeanor. ". . . 21 O.S. 355 [21-355]. It shall be unlawful for any member of any board of county commissioners, city council or other governing body of any city, board of trustees of any town, board of directors of any township, board of education of any city or school district, to furnish, for a consideration any material or supplies for the use of said county, city, town, township, or school district." From a plain reading of these statutes, there is no doubt that a public contract in which a member of the governing board has an interest is void. In the Oklahoma case of Youngblood v. Consolidated School District No. 3, Payne County, 104 Okl. 235, 230 P. 910 (1924), the Court held that it was against public policy for an officer of a district board of education to become personally interested in the allowance or disallowance of claims; he cannot properly serve two masters, i.e. his own personal interest, on the one hand, and the interest of the district of which he is an officer, on the other. The California case of Miller v. City of Martinez, 82 P.2d 519
(1938), states the strong policy reasoning behind disallowing any public servant's personal interest in a contract made by him in his official capacity: "The personal interest of an officer in a contract made by him in his official capacity may be indirect only, still such interest would be sufficient to taint the contract with illegality. If his interest in the contract is such as would tend in any degree to influence him in making the contract, then the instrument is void because contrary to public policy, the policy of the law being that a public officer in the discharge of his duties as such should be absolutely free of any influence other than that which may directly grow out of the obligations that he owes to the public at large." This expression of public policy against the personal interest of public officers in public contracts has been expressed in numerous previous Attorney General Opinions. (See, Attorney General Opinion Nos. 69-263, 72-180, 73-190, and 73-234.) None of the above-quoted statutes prohibit the agency manager from seeking office. These provisions deal only with the validity of transactions between a governing board and a board member, or between a board and a board member's business. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: If an insurance agency manager, whose agency carries the City of Maysville's insurance, runs for and is elected to the office of City Councilman, from and after his or her election and qualification as a City Council member, the City may not enter into or renew a "contract" of insurance with a company for which the Council member serves as a manager or agent under the provisions of 62 O.S. 371 [62-371] (1971), and 21 O.S. 344 [21-344] and 21 O.S. 355 [21-355] (1971). (J. ANGELA ABLE) ** SEE: OPINION NO. 91-542 (UNPUBLISHED) ** ** SEE: OPINION NO. 89-503 (UNPUBLISHED) ** ** SEE: OPINION NO. 87-530 (UNPUBLISHED) **